### GETTYS v. COBBLE et al.    (No. 10404.)

(Court of Civil Appeals of Texas. Fort Worth. Oct. 7, 1922.)

**Elections ⟐152—Contest of nomination may be heard by party's executive committee before nominations are certified.**

Notwithstanding Vernon's Sayles' Ann. Civ. St. 1914, arts. 3130, 3131, provides that the county clerk, as directed by the county executive committee, shall publish the names of successful candidates as a party prior to, and that objections to the nomination be made within five days thereafter, and that, unless objection is so made, no nomination shall be contested, under article 3149, providing for filing contests with the executive committee within five days after its declaration of the result, a county executive committee had authority and jurisdiction to hear and decide a contest prior to the chairman's certificate of nominations to the clerk as required by article 3125, so that the decision of the committee was reviewable by appeal to the district court under article 3154, and its decision final under article 3156.

Appeal from District Court, Cooke County; C. R. Pearman, Judge.

Suit by J. L. Gettys against J. F. Cobble and others. From an order refusing a temporary injunction, plaintiff appeals. Affirmed.

J. T. Adams, of Gainesville, and McMurray & Gettys, of Decatur, for appellant. John Speer, of Denton, and W. O. Davis, J. Ralph Bell, and Culp, Culp & Culp, all of Gainesville, for appellees.

BUCK, J. J. L. Gettys, appellant here and plaintiff below, filed suit in the district court of Cooke county, alleging that he was a candidate in the Democratic primary of July 22, 1922, for the office of county attorney for Cooke county, and that the county executive committee convened on the first Saturday following said primary election and canvassed the returns, and that said returns showed that the plaintiff had received a total of 2,126 votes for said office, and that Fred E. Wankan had received a total of 2,059 votes, making the plaintiff the nominee of the Democratic party for county attorney for Cooke county by a net majority of 67 votes. He further alleged that the chairman of the county executive committee failed and refused to certify the name of the plaintiff to the county clerk of said county as the nominee of said party, and that, at the time of the filing of the suit, he still refused to so certify the name of the plaintiff to said clerk.

The petition further alleged: That on August 3, 1922, the said Fred E. Wankan filed with the chairman of the county executive committee a petition setting out supposed grounds for contesting the nomination of the plaintiff, without having first filed with the county clerk of Cooke county his objections to plaintiff's nomination, as required by article 3130 of the Revised Civil Statutes. That thereupon said chairman called the county executive committee of said county for the purpose of hearing the contest, and that said committee convened on August 11, thereafter, and heard the contest and declared Wankan to be the nominee for county attorney. It appears from the record that the committee decided that in one box in which Gettys received 76 votes and Wankan 3 votes fraud had been practiced, and the box was thrown out. Also 4 votes in another box were thrown out

because of alleged fraud. Thereupon plaintiff appealed to the district court, and that court subsequently, upon a hearing, sustained the ruling and decision of the county executive committee. Plaintiff further alleged that the hearing before the county executive committee, prior to the issuance of a certificate to the county clerk showing that the plaintiff had received a majority of all the votes cast at said primary election for said office, was not authorized by law and was null and void, and that the hearing and decision of the district judge upon an appeal was likewise null and void.

Hence, he prayed that the county clerk, county judge, and sheriff of Cooke county be restrained from placing the name of Fred E. Wankan as the Democratic nominee for county attorney of the ticket to be used in the general election held in November, 1922, and further prayed that Granville Jones, chairman of the Democratic executive committee, be directed to certify the name of the plaintiff to the county clerk of said county as the Democratic nominee for said office, and that the other defendants be commanded to place plaintiff's name on said ticket as the Democratic nominee for county attorney. From an order of the district judge, made in vacation, refusing the application for a temporary injunction, plaintiff has appealed.

There are attached to defendant's answer affidavits of Fred E. Wankan, plaintiff's opponent, and subsequently made a party to the suit, and of Granville Jones, chairman of the county executive committee, and of John F. Cobble, county clerk, and there appears in the record an affidavit of plaintiff also. Fred E. Wankan's affidavit states that no certificate was ever filed with the county clerk of Cooke county showing that plaintiff was the nominee of the Democratic party for county attorney, nor was the name of said plaintiff ever posted or published as such nominee but that on the contrary, the name of the defendant was duly certified to the said clerk as such nominee and his name was posted and published as such, and, though more than five days had elapsed since said filing and publication, plaintiff has filed with said clerk no objections to said certificate. Granville Jones states in his affidavit that he was and is the chairman of the Democratic executive committee for Cooke county, and that on examination of the returns of said primary election said returns showed that Gettys had received 2,126 votes and Fred E. Wankan had received 2,059 votes; that he did not certify the result of said election to the county clerk of Cooke county, but after the contest was decided by the district court in favor of Wankan, that he certified the latter's name as the nominee for county attorney. Cobble's affidavit is to the effect that Wankan had not filed in his office any protest or other instrument protesting against the nomination of J. L. Gettys, nor filed any instrument objecting to the nomination of said Gettys.

Appellant contends that article 3125, V. S. Tex. Civ. Statutes, prescribes a mandatory duty on the part of the chairman of the executive committee to certify to the county clerk the names of those candidates receiving the highest vote for the respective offices; that, in the absence of such certificate, neither the county executive committee, district court, nor district judge has jurisdiction to try a contest. Said article reads as follows:

"The county executive committee shall make a list of the candidates who have received the highest vote for office, and the chairman of the executive committee shall certify to the same and deliver it to the county clerk of the county."

### Article 3130 reads as follows:

"The county clerk shall cause the names of the candidates who have received the necessary vote to nominate, as directed by the county executive committee, for each office, to be printed in some newspaper published in the county, and, if no newspaper be published in a county, then he shall post a list of such names in at least five public places in the county, one of which shall be upon the door of the court house in said county."

### Article 3131 provides:

"All objections to the regularity or validity of the nomination of any person, whose name appears in said list, shall be made within five days after such printing or posting, by a notice in writing filed with the county clerk, setting forth the grounds of objections. In case no such objection is filed within the time prescribed, the regularity or validity of the nomination of no person whose name is so printed or posted, shall be thereafter contested."

### Article 3149 reads as follows:

"The complaining candidate if he desires to file a contest with the executive committee, shall, within five days after the result has been declared by the committee or convention, cause a notice to be served on the chairman or some member of the executive committee, in which he shall state specifically the ground of his contest; also shall serve, or cause to be served, on the opposing candidate a copy of such notice, at least five days prior to the date set for hearing by the committee. If special charges of fraud or illegality in the conduct of the election, or in the manner of holding the convention, or in the manner of making nominations, are made, and not otherwise, the chairman, or, in case he fails or refuses, any member of the committee, shall within twenty days after the primary election, or the convention, convene the executive committee, who shall then examine the charges, hear evidence and decide in favor of the party who in their opinion was nominated in the primary election, or in the convention; provided, that, before any advantage can be taken of the disregard or violation of any directory provision of the law, it must appear that, but for such disregard or violation, the result would have been different."

Article 3154 provides:

"In state, district, county, precinct or municipal offices, the certificate of nomination issued by the president or chairman of the nominating convention, or chairman of the county executive committee, shall be subject to review, upon allegations of fraud or illegality, by the district court of the county in which the contestee resides, or the judge of said court in vacation; provided, that such allegations are filed in said court within ten days after the issuance of said certificate; and when said allegations are so filed, or the appeal from the decision of the executive committee is perfected, the judge of the district court shall set same down for hearing, either in term time or vacation, at the earliest practical time; and a copy of said grounds of contest, together with the notice of the date set for said hearing, shall be prepared and issued by the clerk of the district court and be served upon the contestee five days before the hearing before said court or judge, and the parties to said contest shall have the right to summon witnesses."

If the hearing before the executive committee may be held prior to the issuance of the certificate by the chairman thereof to the county clerk, and was otherwise according to law, then it is conceded that the district court had appellate jurisdiction of the cause, and that its decision and judgment is final. Article 3156, Rev. Stats.; Ashford v. Goodwin, 103 Tex. 491, 131 S. W. 535, Ann. Cas. 1913A, 699. While at least some of us think that article 3125 is mandatory in its nature and requires the county executive committee to make a list of the candidates who have received the highest number of votes for office, and requires the chairman thereof to certify the same and deliver it to the county clerk of the county, yet article 3149 requires the complaining candidate, if he desires to file a contest with the executive committee, to, within five days after the result has been declared by the committee, cause a notice to be served on the chairman or some member of the committee, in which he shall state specifically the ground of his contest. That service shall likewise be had on the opposing candidate at least 5 days prior to the date set for hearing by the committee and a hearing shall be had within 20 days after the primary election. The executive committee meets 7 days after the election, notice of a desire to file a contest with the executive committee shall be filed 5 days after the result has been declared, and 5 days' notice shall be given to the opposing candidate. Thus 17 of the 20 days provided by article 3149 for the hearing may be taken up, and the executive committee would have only 3 days thereafter to call a meeting and hear the contest. By a willful or negligent failure of the chairman of the executive committee to certify the names of those receiving the highest vote to the county clerk within 5 days after the result has been declared, the candidate desiring to have his contest presented to the committee would be precluded therefrom with no fault or neglect of his own. Kentucky has an election law very similar to ours and in Ward v. Howard, 177 Ky. 38, 197 S. W. 506, it was held that the giving of notice of a primary election contest within 5 days is a jurisdictional prerequisite, and if notice is not given within that time the circuit court had no jurisdiction. Hence, where the county election commissioners, corresponding to our county executive committee, failed to issue certificates of nomination within the five days after the canvass and tabulation of votes and the determination of who the successful candidate was, that a contestant may within five days thereafter begin his contest. The court says:

"It may be admitted for many purposes the certificate is the evidence of title to the nomination, and that without a certificate the candidate for many purposes should not be treated as the nominee, with the rights and privileges that attach to a regular nomination, but yet, we think, the actual issual of a certificate is not a prerequisite to the commencement of an election contest. The right to begin this contest grows out of the fact that the candidate whose nomination is contested has received on the face of the returns as made by the election officers a majority of the votes, and this fact has been ascertained and determined by the election commissioners, because the person who is found to have received a majority of the votes is entitled as a matter of right to have the certificate, provided he desires it and files the statement required by the Corrupt Practice Act.

"If the issual of a certificate were an indispensable prerequisite to the bringing of a contest suit, the election commissioners might delay the issual of a certificate until it was too late to bring a suit that would avail anything, although it is true they might be compelled by mandamus proceedings to issue one. But we repeat that the primary election law does not specifically provide that contest proceedings shall not be started until after a certificate has been issued. The intent of this statute is that the contest shall be commenced within five days from the time the commissioners should have awarded the certificate; that is to say, within five days from the time when the returns were canvassed and tabulated and the result ascertained."

To a like effect is the case of Matthews v. Stephens, by the same court, 177 Ky. 143, 197 S. W. 544. We believe the reasons given in these two Kentucky cases for holding that a contest may be begun before the issuance of a certificate by the county election commissioners to the county clerk are sound, and apply in the case before us. Hence we hold that the county executive committee had authority and jurisdiction to hear the contest between the appellant and the appellee, prior to the issuance of a certificate, and to decide the same. If this holding be sound, it follows that the appeal

to the district court was regular and statutory, and the decision and judgment of the said court is final and binding on all parties.

Owing to the fact that the losing party may desire to apply for a writ of error to the Supreme Court, and because of the limited time in which that can be done and a hearing had and a decision .rendered, we have concluded that it was our duty to decide this case as speedily as possible. Therefore we have not examined the authorities from many of the other jurisdictions, but we believe that we have reached the proper conclusion.

Hence the judgment and order of the district judge in refusing to grant the injunction is affirmed.