KINNARD et al. v. LEE. (No. 10425.)

(Court of Civil Appeals of Texas. Fort Worth. Oct. 25, 1922.)

1. Elections ⬗120—Constitution held not to confer power on district judge to hear primary election contest in vacation.

Const. art. 5, § 8, as amended in 1891, confers on the district court original jurisdiction to determine contests of primary as well as general elections, but does not authorize the exercise of the power so conferred by the judge in vacation.

2. Elections ⬗152—Trial amendment setting up new grounds of contest not permissible after prescribed time for filing contest.

The action of a county executive committee in permitting contestant to file a trial amendment setting up a new and distinct ground of contest several days after the time for filing contests prescribed by the statutes and in sustaining the contest on the new grounds was contrary to Vernon's Sayles' Ann. Civ. St. 1914, art. 3149, providing for service of notice of grounds at the time of filing a contest, and hence invalid.

3. Elections ⬗152—Election returns submitted to executive committee prima facie proof of rights of candidates.

The effect of Vernon's Sayles' Ann. Civ. St. 1914, art. 3129, providing that ballot boxes containing ballots shall be locked and sealed and not opened unless there is a contest of a nomination charging fraud and illegality and other statutes providing that the candidates receiving the requisite majorities at the primary election, shall be declared the nominees, is to make election returns submitted to a county executive committee prima facie proof of the rights of candidates, and for a contestant to overcome that proof it is incumbent on him to comply with the statutes according him the right to contest.

Appeal from District Court, Haskell County; W. R. Chapman, Judge.

Petition by R. E. Lee for injunction and mandamus against James P. Kinnard and

others. From an order in favor of petitioner, defendants appeal. Affirmed.

· Murchison & Davis, of Haskell, and Theodore Mack, of Fort Worth, for appellants.

Smith & Grissom, of Haskell, and Stinson, Coombes & Brooks, of Abilene, for appellee.

DUNKLIN, J. At a primary election of the Democratic party held on July 22, 1922, in Haskell county, there were five candidates for the office of county judge of that county. At that election R. E. Lee and Jas. P. Kinnard each received a greater number of votes than any one of the other three candidates, but neither of them received a majority of all the votes cast for that office. Prior to the date of that election, the county executive committee of the Democratic party had decided that the nomination for all county officers to be determined by primary election should be by a majority of all the votes, and in obedience to that resolution there was a second primary election held on August 26, 1922, at which Lee and Kinnard were the only candidates voted on for the office of county judge. At that election 1,345 votes were cast for Lee and 1,320 votes were cast for Kinnard, as shown on the face of the returns made to the Democratic executive committee of the county. On the 2d of September following, that committee met and canvassed the returns of the second primary in accordance with the statutes in such cases made and provided, and, after canvassing the returns so made to them, declared that Lee had received a majority of the votes, and was the regularly elected nominee of the Democratic party for the office of county judge for Haskell county. Thereafter, on the 5th day of September, 1922, Kinnard, who was dissatisfied with such action of the executive committee, filed his contest in writing of said second primary election with the chairman of the executive committee, and notice of said contest with a copy of the specifications which had been filed with the executive committee was served on the contestee, R. E. Lee, in the time and manner provided by law. On the 14th day of September, following, the executive committee proceeded to hear and determine said election contest, both the contestant and the contestee appearing at that hearing.

The following were the grounds upon which the contest of the election was based, as set out in Kinnard's original petition, or contest, filed with the executive committee:

"6(a) That a number of ballots cast at said election for contestant in Cottonwood election precinct No. 12, to wit, at least five ballots, through fraud, inadvertence, or mistake of the one calling the votes when the same were being counted, were counted for the contestee."

"7(b) That a number of the ballots cast in said Cottonwood election precinct No. 12, to wit, at least two, and counted for the contestee, had the Democratic pledge penciled or erased thereon, and were therefore illegal ballots, and should not have been counted at all for any one."

"12(a) That a number of the ballots cast at said election in the Bunker Hill election precinct No. 20, for the contestant, to wit, about five, through fraud, inadvertence, or mistake of the one calling the votes, when the same were being counted, were counted for the contestee.

"(b) That a number of the ballots cast at said election in the Bunker Hill election precinct No. 20, to wit, at least six, and counted for the contestee, had the Democratic pledge penciled or erased thereon, and were therefore illegal ballots, and should not have been counted."

At said hearing, on the 14th of September, the executive committee decided to open the two ballot boxes sent in from the Cottonwood election precinct No. 12 and Bunker Hill election precinct No. 20; those two boxes being the boxes at which the contestant had alleged ballots had been cast for Lee which should not have been counted. After those two boxes had been opened and the ballots inspected, it was found that the presiding judge of the election in each of said two precincts had failed to indorse his name on the ballots. which had been voted in those boxes. Thereupon Kinnard, by permission of the executive committee, and over the protest of the contestee, R. E. Lee, filed another pleading, in which the following allegations were made:

"Now comes Jas. P. Kinnard, contestant in the above entitled and numbered contest, and ask leave to file this, his first trial and supplemental amendment in this cause, and for such trial amendment says and shows to the committee that the presiding officer of both Cottonwood and Bunker Hill voting precincts failed to write his name across the back of the tickets, that were voted, as provided by law, the numbers of said boxes being Nos. 12 and 20, respectively, and that the votes in said boxes cannot be counted. Wherefore he prays and ask that these two boxes be thrown out entirely, and that contestant be given the certificate of election."

After the filing of said amended pleading, the executive committee hearing the contest found and determined that all the votes cast in those two precincts were illegal and void by reason of the failure of the presiding officers to indorse their names on the back of the tickets, and thereupon threw out and discarded all the ballots cast in those two boxes for both contestant and contestee for the office of county judge. With the ballots cast in those two boxes eliminated, the executive committee found that Kinnard had received a majority of all the votes cast in the entire county, and by reason of that fact Kinnard was declared the Democratic nominee in Haskell county for the office of county judge in that county.

From that finding, the contestee R. E. Lee

perfected his appeal under the provisions of the statute, to the district judge of the Thirty-Ninth district of Texas, which district embraced Haskell county, by giving the notice in writing of such appeal in the time and manner provided by article 3153, Vernon's Sayles' Tex. Civ. Stats., and within the time provided by said statute Lee had prepared and filed in the office of the district clerk of Haskell county a transcript of the proceedings in said election contest.

When the contest was originally filed with the executive committee, the district court of Haskell county was not in session, and no regular session of said court has been held since, nor can be held until the 13th of November, 1922, although the general election at which a judge of the county court of Haskell county will be regularly elected will be held, as required by law, on the first Tuesday in November, 1922, which will be the 7th day of said month, or in other words, six days prior to the convening of the next term of the district court of Haskell county.

Kinnard did not file a contest of said election in the district court of Haskell county as he had the right to do by article 3147, V. S. Tex. Civ. Stats., but the only contest filed by him was with the Democratic executive committee above mentioned, in accordance with the provisions of article 3149 of the statutes.

After said appeal had been perfected as recited above, R. E. Lee filed his petition with Hon. W. R. Chapman, judge of the district court of Haskell county, complaining of Jas. P. Kinnard and of H. R. Jones, chairman of the Democratic executive committee, and Emory Menefee, county clerk of said county, in which he alleged all of the facts recited above, and further alleging, in substance, that the provision in article 3154 of the statutes, permitting the hearing of such a contest in vacation as well as in term time of the district court, and also all provisions in articles 3147 and 3149 for the hearing and determination of such a contest of a primary election by the executive committee were unconstitutional and void. It was further alleged that, unless the chairman of the executive committee in pursuance of the action of that committee above stated, is restrained from so doing, or is otherwise commanded by said judge, he will certify to the county clerk of Haskell county the name of Jas. P. Kinnard, the contestant, as the nominee of the Democratic party in Haskell county for the office of county judge, and that, unless restrained from so doing or otherwise commanded by said judge, the county clerk of that county will list Kinnard's name as the nominee of the Democratic party for the office of county judge, and publish the same, and cause the same to be printed on the official ballots at the general election in November, 1922, as such nominee. The contestee further alleged that he was the regular nominee of the Democratic party for the office of county judge as shown on the face of the returns of the second primary, and as first declared by the executive committee, and that he is entitled to have his name placed upon the ticket as such. It was further alleged that by reason of all the facts alleged in the petition and the substance of which are recited above, he was without any legal remedy for the enforcement and protection of his rights to have his name placed upon the ticket as the nominee for said office, and therefore he prayed for an injunction enjoining and restraining H. R. Jones, as chairman of the executive committee, from certifying to said county clerk the name of Kinnard as the nominee for that office, also for a writ of injunction restraining said clerk from listing and publishing the name of Kinnard as nominee for that office, and having the same printed upon the official ballots for the general election to be held November 7th. The contestee further prayed for a writ of mandamus, commanding the said Jones, as chairman of said committee, to certify in his official capacity the name of Lee as the nominee of the Democratic party in Haskell county for the office of county judge of said county, and for a like writ of mandamus, commanding Emory Menefee, clerk of said county, to list and publish Lee's name as such nominee and to have the same printed on the official ballot as such nominee at said election. To the petition so filed, all of the defendants filed general demurrers and general denials.

That petition of the contestee was heard by the district judge on October 10, 1922, and at such hearing the facts already related were agreed to, as evidenced by an agreed statement of facts filed herein, signed by counsel for R. E. Lee, as plaintiff and by counsel for Jas. P. Kinnard, the contestant, H. R. Jones, chairman of the Democratic executive committee of the county, and by Emory Menefee, county clerk as defendants. The statement of facts so filed further shows that H. R. Jones, as chairman of the executive committee, will certify to the county clerk Kinnard's name as the Democratic nominee for the office of county judge, and that said clerk will publish his name as such nominee and have same printed upon the official ballot for the general election to be held November 7, unless they are restrained from so doing and commanded to do otherwise by order of the district judge.

Upon such hearing, the trial judge reached the following conclusions of law:

"I conclude as a matter of law that primary elections of the state of Texas of the Democratic party are held under the forms of the law; that the provisions of section 8 of article 5 of the Constitution of the state of Texas, giving the district court jurisdiction of contested elections, means a district court in ses-

sion, and that contested elections as provided by said section of said article of the Constitution covers and includes primary elections held under the forms of the statutes of this state, and that the jurisdiction of the district court to hear election contests under the provisions of said section of said article of the Constitution is exclusive, and that the executive committee was without authority at law to hear and determine the election contest presented by the defendant Jas. P. Kinnard; that the law providing for election contests to be heard by the executive committee is itself unconstitutional and void; and, having found as a fact that the said Jas. P. Kinnard never filed any contest of said election with the district court, as provided by law, and having further found as a fact that the plaintiff, R. E. Lee, received a majority of the votes in the second primary for the nomination of the Democratic party for the office of county judge of Haskell county, Tex., I am of the opinion he is entitled to the certificate and entitled to the nomination, and that his name should be so certified, listed, published, and printed, as provided by law."

Upon the conclusions so reached, the trial judge awarded to the petitioner a writ restraining the chairman of the executive committee from certifying to the county clerk the name of the contestant Kinnard as the nominee for the office of county judge, and commanding him to certify the name of R. E. Lee as the duly elected nominee for that office; also restraining said county clerk from publishing the name of Kinnard as such nominee, and from having his name printed on the official ballot at the regular election to be held on November 7, and commanding said clerk to publish and list the name of R. E. Lee as such nominee, and to have his name printed on the official ballot at said general election as such nominee for the office of county judge of Haskell county. The writ so decreed was thereafter issued and served upon the defendants. At the time said order was made the defendants and each of them excepted and gave notice of appeal to this court, which appeal was thereafter duly perfected.

Following are some of the articles of the statutes relating to primary elections:

Art. 3122: "All returns of precinct primary elections, properly signed and certified as correct by the judges and clerks thereof, showing the vote cast for each candidate, shall be sealed and immediately delivered, after such primary election, to the chairman of the county executive committee of the party. Such party chairman shall give notice to the members of the county executive committee to assemble at the county seat of the county on the first Saturday after the first primary election; and said returns shall then be opened under the direction of such executive committee and canvassed by them."

Article 3125: "The county executive committee shall make a list of the candidates who have received the highest vote for office, and the chairman of the executive committee shall certify to the same and deliver it to the county clerk of the county."

Article 3129: "Ballot boxes after being used in primary elections shall be returned with the ballots cast, or contained in each box as they were deposited by the election judges, locked and sealed, to the county clerk, and, unless there be a contest for a nomination in which fraud or illegality is charged, they shall be unlocked and unsealed by the county clerk and their contents destroyed by the county clerk and the county judge without examination of any ballot, at the expiration of sixty days after such primary election."

Article 3130: "The county clerk shall cause the names of the candidates who have received the necessary vote to nominate, as directed by the county executive committee, for each office, to be printed in some newspaper published in the county, and, if no newspaper be published in a county, then he shall post a list of such names in at least five public places in the county, one of which shall be upon the door of the courthouse in said county."

Article 3131: "All objections to the regularity or validity of the nomination of any person, whose name appears in said list, shall be made within five days after such printing or posting, by a notice in writing filed with the county clerk, setting forth the grounds of objections. In case no such objection is filed within the time prescribed, the regularity or validity of the nomination of no person whose name is so printed or posted, shall be thereafter contested."

Article 3132: "After said names have been so printed or posted for the period above required, the said clerk shall cause said names to be printed on the official ballot in the column for the ticket of that party."

Article 3133: "It shall be the duty of the county clerk of each county to post in a conspicuous place in his office, for the inspection and information of the public, the names of all candidates that have been lawfully certified to him to be printed on the official ballot, for at least ten days before he orders the same to be printed on said ballot; and he shall order all the names of the candidates so certified printed on the official ballot as otherwise provided in this title."

Article 3143: "Any executive committee or committeeman or primary election officer, or other person herein charged with any duty relative to the holding of the primary election, or the canvassing, determination or declaration of the result thereof, may be compelled by mandamus to perform the same in accordance with the provisions of this title."

Article 3147: "In all contests for a primary election or nomination of a convention based on charges of fraud or illegality in the method of conducting the elections, or fraud or illegality in selecting the delegates to the convention, or in certifying to the convention, or in nominating candidates in state, district, county, precinct or municipal conventions, or in issuing certificates of nomination from such conventions, the same shall be decided by the executive committee of the state, district, or county, as the nature of the office may require, each executive committee having control, in its own jurisdiction, or by the district court, or judge of said court in vacation, of the dis-

trict where the contestee resides, said executive committee and the district courts having concurrent jurisdiction."

Article 3149: "The complaining candidate, if he desires to file a contest with the executive committee, shall, within five days after the result has been declared by the committee or convention, cause a notice to be served on the chairman or some member of the executive committee, in which he shall state specifically the ground of his contest; also shall serve, or cause to be served, on the opposing candidate a copy of such notice, at least five days prior to the date set for hearing by the committee. If special charges of fraud or illegality in the conduct of the election, or in the manner of holding the convention, or in the manner of making nominations, are made, and not otherwise, the chairman, or, in case he fails or refuses, any member of the committee, shall within twenty days after the primary election, or the convention, convene the executive committee, who shall then examine the charges, hear evidence and decide in favor of the party who in their opinion was nominated in the primary election, or in the convention; provided, that, before any advantage can be taken of the disregard or violation of any directory provision of the law, it must appear that, but for such disregard or violation, the result would have been different."

Article 3150: "The executive committee may, if in its opinion the ends of justice require it, unlock and unseal the ballot boxes used in the precinct where fraud or illegality is charged to have been used, and examine their contents, after which they shall be sealed and delivered to the county clerk."

Article 3151: "When the committee has decided the contest, unless notice of appeal to the district court is given, the executive chairman shall certify its findings to the officers charged with the duty of providing the official ballot; and the name of the candidate in whose favor the executive committee shall find shall be printed on the official ballot for the general election."

Article 3152: "In case such appeal is not perfected in the manner and time as herein provided, the chairman of the executive committee trying such contest shall certify the name of the party held by the executive committee to have been nominated to the proper office, to be placed on the official ballot."

Article 3153: "Where contests are originally filed with the executive committee, either party shall have the right to appeal from the final decision of the executive committee to the district court having jurisdiction; and said contest shall there be tried de novo by said court. The party taking such appeal shall, within three days from the final decision of the executive committee, file written notice of such appeal with the chairman or secretary of such executive committee. Upon the filing of such notice of appeal, the secretary of said executive committee shall prepare a certificate showing that such contest had been tried and determined by such executive committee, the decision of such committee, and that notice of appeal had been given, and shall file same, together with all papers filed in such contest, in the district court, or with the district judge, in vacation, of the district having jurisdiction

of such appeal, within ten days after the decision of the executive committee is rendered; and the filing of such certificate and papers in said court, or with said judge in vacation, shall be held to perfect such appeal. And if for any cause the secretary of said executive committee shall fail or refuse to file said certificate and other papers pertaining to such appeal, in the district court of such district, or with the judge of said district, within ten days after such decision has been rendered by said committee, then in such event the contestant may prepare a brief statement of the action of said committee in such contest, and perfect his appeal by filing same with said district court, or with the judge of said district, within fifteen days after such decision by the executive committee."

Article 3154: "In state, district, county, precinct or municipal offices, the certificate of nomination issued by the president or chairman of the nominating convention, or chairman of the county executive committee, shall be subject to review, upon allegations of fraud or illegality, by the district court of the county in which the contestee resides, or the judge of said court in vacation; provided, that such allegations are filed in said court within ten days after the issuance of said certificate; and when said allegations are so filed, or the appeal from the decision of the executive committee is perfected, the judge of the district court shall set same down for hearing, either in the term time or vacation, at the earliest practical time; and a copy of said grounds of contest; together with the notice of the date set for said hearing, shall be prepared and issued by the clerk of the district court and be served upon the contestee five days before the hearing before said court or judge, and the parties to said contest shall have the right to summon witnesses."

Article 3155: "The court or judge may, if in his opinion the ends of justice require it, unlock and unseal the ballot boxes used in the precinct where fraud or illegality is charged to have been used, and examine their contents, after which they shall be sealed and delivered to the county clerk."

It thus appears that by article 3149, if a contest of election is filed with the executive committee, the contestant shall in his complaint state "specifically the ground of his contest," and serve or cause to be served on the opposing candidate a copy of the same at least five days prior to the date set for hearing by the committee; and if special charges of fraud or illegality in the conduct of the election are made, the executive committee shall hear and determine the same within 20 days after the primary election is held. And by the same article, it is provided that such contest must be filed with the executive committee within 5 days after the result of the primary election has been declared by the executive committee.

[1] It has been settled by the decision of our Supreme Court in Ashford v. Goodwin, 103 Tex. 491, 131 S. W. 535, Ann. Cas. 1913A, 699, that article 5, section 8, of the Constitution, as amended in 1891, confers upon the district

court original jurisdiction to determine contests of primary elections, as well as contests of general elections; but that the jurisdiction so conferred upon the district court does not authorize the exercise of the power so conferred by the judge of said court in vacation; hence the trial judge was correct in holding that he had no jurisdiction in vacation to determine the contest of appeal by contestee from the decision of the executive committee. Article 3154, conferring jurisdiction upon the district court to try contested elections, does not provide any rule of procedure for the trial of such a contest after jurisdiction is acquired. By reason of that fact, in Ashford v. Goodwin, supra, it was insisted that that statute was void. But it was held, after referring to certain provisions of the statute, as follows:

"These provisions are sufficient to bring the parties before the court and subject them to its jurisdiction. Although, looking to this statute alone, the procedure is meager, yet the district court has authority in such conditions to adopt a rule of procedure, if necessary for its government in the examination of such cases, and to apply to the facts of the case before it any and all rules of procedure which can be made applicable to the issues to be investigated, which are not in conflict with the provisions of any statute or the Constitution. Pendley v. Berry, 95 Tex. 72, 11 Cyc. 740. We quote from the last authority as follows: 'In the absence of any statutory provision or regulation in reference thereto, the court has the inherent power to make such rules, subject, however, to this limitation, that a court can make no rule which is unreasonable and which deprives a party of legal rights or which is in contravention of a statute or of the law of the land.' Boring v. Griffith, 48 Tenn. 462. In the case last cited the precise question now before the court arose in the case of a contested election, in which it was held that the rules applicable generally to contested elections were not applicable to the case before the court, and in which the Supreme Court of Tennessee said: 'The court had the power to supply defects in the proceeding, such as bonds for cost, etc., or to require a more specific allegation of the grounds of contest to be made in writing and to make all such amendments and orders as were necessary to perfect its jurisdiction of the case.' In the note to 11 Cyc., above cited, cases are cited from a great many of the states in support of the text, and in so far as we have examined them it is well supported. When a district court has acquired jurisdiction of a case as in the present one, justice will not be permitted to miscarry for the want of some rule of procedure by which the facts may be brought before the court or any other matter that is necessary for the examination and decision of the question. It is unnecessary for us in this case to go further in the discussion of this question. We hold that the court had ample power to perform the duties prescribed by the statute, therefore that objection is not well taken."

The case of Hammond v. Ashe, 103 Tex. 503, 131 S. W. 539, was a petition for manda-mus to require the district judge to grant a jury trial of issues of fact arising in the contest of a primary election. In disposing of that case, our Supreme Court said:

"In this case we think it clear that the right of trial by jury does not exist. The statute does not allow it, and the provision of the Constitution (article 5, § 10), has no application. The language of the latter does not embrace contested elections as 'causes' in which the right of trial by jury is secured. The grant in the Constitution of jurisdiction to hear contests of elections, which is the one which this court recently held to include power to hear contests of primary elections where they are given the characteristics of legal elections and contests of them are provided for by the Legislature (Ashford v. Goodwin, ante, p. 491), does not convert such contests into 'causes,' as that term is used in the provision of the Constitution referred to, nor make them other than proceedings specially created and controlled by the statutes which allow them. Gibson v. Templeton, 62 Tex. 555. The guaranty in the Constitution of the right of trial by jury does not apply to them."

Other decisions might be cited holding that a proceeding to contest an election is not a civil suit, and the trial of same is not necessarily governed by the rules of procedure applicable to the ordinary civil suit, but must proceed in accordance with the statutory provisions authorizing it, as Odell v. Wharton, 87 Tex. 173, 27 S. W. 123; Kennison v. Du Plantis (Tex. Civ. App.) 220 S. W. 118; Bassell v. Shanklin (Tex. Civ. App.) 183 S. W. 105.

In Bailey v. Fly, 97 Tex. 425, 79 S. W. 299, which was a contest of a general, and not a primary, election, it was held that pleadings of the contestee could be amended, although such amendment set up new matter not theretofore pleaded. But this decision was based on article 3056 (formerly 1803) of the Revised Statutes, which specifically provided that pleadings of all parties in such a contest might be amended.

The county executive committee did not sustain the contest on the grounds alleged therefor by the contestant in his original contest, which was filed within the statutory period of 5 days allowed for filing the same, after the decision of the executive committee. The grounds alleged in that complaint or notice were, at least by implication, overruled, and the agreed statement of facts before us does not contain a syllable of evidence to sustain the charges of fraud and illegality specifically alleged in that complaint, as a basis for the contest. But the contest was sustained solely on the ground alleged in the amended complaint, which was filed with the committee on September 14, which was approximately 6 days after the 5-day period allowed by the statutes for filing a contest of the election had expired. Furthermore, the grounds so alleged in that amendment were entirely different and distinct from

those alleged in the original contest. The proof required to sustain the original complaint would not have been admissible in support of the amended complaint, and vice versa. Hence it cannot be successfully maintained that the amended complaint or contest did not set up a new cause of action, if such a contest be denominated a cause of action, even though, in an original civil suit, an amendment setting up a new cause of action may be filed, subject to the defense of limitation, and subject also to the right of the opposing party to amend to meet such new cause and to claim a continuance in order to meet the new issue with evidence. Moore v. Snowball, 98 Tex. 16, 81 S. W. 5, 66 L. R. A. 745, 107 Am. St. Rep. 596.

The inspection by the executive committee of the ballots when a ballot box is opened in accordance with statutory authority, and the determination by them that the ballots have not been indorsed with the name of the presiding officer of the election at that box as required by statute, and that therefore such ballots should not be counted, when no issue of forgery of such a signature is presented, but the only issue being that there was no name at all indorsed on the ballots, as was true in this case, is the performance of a ministerial duty, and is not a judicial determination of that issue, any more so than was the performance of the statutory duty in the first instance to canvass the returns made by the presiding officer of the different voting precincts to the executive committee, and to determine from the same what persons had received nomination and were entitled to have their names certified as successful candidates and entitled to be placed on the ballot at the ensuing general election as regular nominees of the party. For that reason, we would feel inclined to hold, if such a holding were necessary to a proper disposition of this appeal, that to the extent the statutes invest the county executive committee with authority to decide a contest of a primary election, on the grounds alleged in contestant's amended contest, if the same be filed within the statutory period required, such statutes are not in contravention of the Constitution.

[2] But, as is well settled by the decisions, the county executive committee had only such powers as were given to them by the statutes; and it was not a body clothed with the general judicial powers and authority vested in courts by the statutes and under the rules of the common law. Even though it could be said that its duties were judicial or quasi judicial, it had not the inherent power to adopt any rule of procedure in the trial of the contest, which not only was not delegated to them by the statutes, but which was contrary to the plain provisions of the statutes. The action of the executive committee in permitting the contestant to file the trial amendment setting up a new and distinct ground of contest several days after the time prescribed by the statutes for filing a contest, and in sustaining the contest upon those new grounds, was contrary to the plain provisions of article 3149 of the statutes, and hence such proceeding was invalid. As held by our Supreme Court in Ashford v. Goodwin, supra, even the court who has the inherent power in an election contest to adopt rules of procedure to meet the necessities of the case cannot, in so doing, go counter to a statute.

[3] Appellant has cited decisions holding that the requirements of article 3011, that the presiding judge of an election must indorse his signature on the back of each ballot, is mandatory, and it is insisted, in effect, that by reason of that statute and those decisions, the executive committee was authorized to throw out all the ballots in the two boxes mentioned in the contest. Some of those decisions are Clark v. Hardison, 40 Tex. Civ. App. 611, 90 S. W. 343; Arnold v. Anderson, 41 Tex. Civ. App. 508, 93 S. W. 696; Brigance v. Horlock, 44 Tex. Civ. App. 277, 97 S. W. 1060; Walker v. Mobley (Tex. Civ. App.) 105 S. W. 61.

By article 3129, it is provided that ballot boxes containing the ballots cast shall be locked and sealed and returned to the county clerk, and shall not be opened by the committee unless there be a contest for a nomination in which fraud or illegality is charged; and by other statutes, the candidates receiving the requisite majorities at the primary election shall be declared the nominees for their respective offices. By reason of such statutes, a candidate may become the legal nominee by reason of illegal votes, and the wisdom of the Legislature in that respect cannot be questioned by the courts. The effect of the statutes is to make the election returns submitted to the executive committee prima facie proof of the rights of the various candidates, and, in order for a contestant to overcome that proof and defeat the right of a candidate thus shown to have received the requisite majority to entitle him to be declared the nominee for the office, it is incumbent upon him to comply with the statutory requirements which accord to him the right of contest.

After the decision of the executive committee, the appellee duly prosecuted his appeal to the district judge of the county, but that appeal availed him nothing, since the judge could not hear the case in vacation, and since the court was not in session at that time, has not been in session since that time, and will not convene in regular session until after November 7th, when the general election will be held. He has been illegally deprived of a valuable statutory right by the decision of the executive committee in sustaining the contest of appellant Kinnard,

which decision was without authority at law.

In order to enforce that right, the judge of the district court had general jurisdiction to grant the injunction and mandamus which were issued, and from which order this appeal is prosecuted. For the reasons pointed out, we hold that the order so made by the trial judge was proper, without the necessity for us to determine, and without determining, the question of the correctness of the conclusion reached by the trial judge that the statutes conferring jurisdiction upon the executive committee to hear and determine contests of primary elections were void in their entirety, because in contravention of the Constitution of the state.

Accordingly, all assignments of error are overruled, and the order from which this appeal was prosecuted is affirmed.

BUCK, J., not sitting.