## BEGO v. ABRAMEIT.
### No. 10670.

Court of Civil Appeals of Texas.
San Antonio.

May 24, 1939.

Rehearing Denied July 12, 1939.

Frank W. Martin, of Goliad, for appellant.

E. L. Dunlap and Alfred C. Baass, both of Victoria, for appellee.

MURRAY, Justice.

At the general election held on November 8, 1938, there were three candidates for the office of County Commissioner of Precinct No. 4, Goliad County, to-wit, Hugo Abrameit, Joel Bego, and Hugo Wilks.

There were four election precincts in Commissioner's Precinct No. 4, to-wit: Precinct No. 7, known as the Fannin box, Precinct No. 6, known as the Schroeder box, Precinct No. 8, known as the Ander box, and Precinct No. 13, known as the Kilgore box. According to the official election returns Hugo Abrameit received 201 votes, Joel Bego, 199, and Hugo Wilks, 21.

This action was brought by Joel Bego in the form of an election contest, such as is provided for by Chapter 9, Title 50, Vernon's Annotated Statutes of Texas. Joel Bego will be hereinafter referred to as contestant and Hugo Abrameit as contestee.

The trial was before the court. After hearing the evidence the court sustained challenges to 4 votes that he counted for contestant, and also held that 2 votes had been cast for contestant but not counted, thus making a net loss of 2 votes for contestant and reducing his vote to 197. A challenge to 1 vote cast for contestee was sustained, thus reducing his vote to 200. The court further found that there were 69 votes cast at the Kilgore box, as follows: For contestee, 38, for contestant, 22, and Hugo Wilks, 9; that the presiding judge of this box did not sign his name on the back of any of these ballots, and that therefore the entire box could not be counted. With this box "thrown out" the result stood:

| | |
|---|---|
| Contestant, Joel Bego, | 175 |
| Contestee, Hugo Abrameit, | 162 |
| Hugo Wilks............... | 12 |

The trial judge, however, refused to declare contestant elected, but, on the other hand, declared the election void and ordered another election, on the grounds that the presiding judge, by his failure to sign his name on the back of the 69 ballots cast at the Kilgore box, had, in effect, denied these voters the right to vote in the election.

Joel Bego has prosecuted this appeal contending that the trial court should not have declared the election void and ordered a new election, but should have declared him elected.

This appeal presents one controlling question, to-wit, Did the presiding judge of the Kilgore box deny the right to vote to the 69 voters who attempted to vote, by his failure to sign his name on the back of the ballots? The trial judge found that the election was otherwise legal and proper in every respect and that the presiding judge of the Kilgore box was not guilty of any fraud, and by inference at least, that his failure to sign the ballots was through inadvertence.

It is our opinion that the voters of the Kilgore precinct were not denied the right to cast their ballots by the failure of the presiding judge of the precinct to place his name on the back of the ballots, but, rather, that the voters failed to cast ballots that could be counted, by their failure to call to the judge's attention the fact that he had not signed their ballots.

■ It has been definitely held that it is the duty of a voter to see that the presiding judge has placed his name on the back of the ballot before he attempts to use the same in casting his vote.

In Davis v. Walcott, 96 S.W.2d 817, 818, this Court used the following language:

"Articles 3008, 3012, and 3018, R.S.1925, deal with the subject and should be construed together. Article 3008 provides in part: 'And shall at the same time deliver to him (the voter) one official ballot on the blank side of which the presiding judge shall have previously written his signature.' Article 3012 provides in part: 'When a citizen shall have prepared his ballot, he shall fold the same so as to conceal the printing thereon, and so as to expose the signature of the presiding judge on the blank side, and shall, after leaving the booth, hand to the numbering judge his ballot.' Article 3018 provides in part: 'The counting judges and clerks shall familiarize themselves with the signature of the judge who writes his name on each ballot that is voted, and shall count no ballot where two or more are folded together, or that does not bear the judge's signature,' etc.

"It is clear from the above that a voter who goes to the polls to vote has an opportunity and in fact it is his duty to see that the presiding judge has signed the ballot given him to use in voting. If it is not signed, he should demand that it be signed." •

McCrary on Elections (4th Ed.) § 724, reads as follows:

"The decisions cited in the preceding sections upon the question whether the provisions of the law are mandatory or directory are not entirely harmonious. They, however, disclose a well-defined disposition on the part of the courts to distinguish between acts to be performed by the voters, and those devolving upon the public officials charged with the conduct of the election. The weight of authority is clearly in favor of holding the voter, on the one hand, to a strict performance of those things which the law requires of him, and on the other of relieving him from the consequence of a failure on the part of election officers to perform their duties according to the letter of the statute where such failure has not prevented a fair election. The justice of this rule is apparent, and it may be said to be the underlying principle to be applied in determining this question. The requirements of the law upon the electors are in the interest of pure elections, and should be complied with at least in substance, but to disfranchise the voter because of the mistakes or omissions of election officers would be to put him entirely at the mercy of political manipulators. The performance by the election officers of the duties imposed upon them can be reasonably well secured by providing a penalty for failure so to do."

■ The voters at the Kilgore box having been given a chance to vote and as a result of their own neglect having failed to cast ballots which under the law can be lawfully counted, are not entitled to have another election called that they might be more careful next time.

Art. 3054, R.C.S.1925, is all the authority given to a trial court to declare an election void and to order another election. The part of that article which is applicable here reads as follows: " * * * should it appear from the evidence that such a number of legal voters were, by the officers or managers of the election, denied the privilege of voting as, had they been allowed to vote, would have materially changed the result, the court shall adjudge such election void, and direct the proper officers to order another election to fill said office * * * ."

■ We construe the above language to mean that the voter must be denied the privilege of voting by the act of the officers or managers of the election and not as a result of his own neglect.

It further occurs to us to consider these ballots which were not identified by the signature of the presiding judge and to further ascertain for whom they were cast and by this process determine that had they been counted the result of the election would have been different, and, therefore, order another election so that such voters may again have an opportunity to cast their votes and by the use of a little more care have their votes counted, is to do, in effect, what Art. 3018, supra, says shall not be done.

914

We therefore conclude that the trial judge was in error in declaring the election held on November 8, 1938, void and ordering another election, but, on the other hand, he should have rendered judgment declaring Joel Bego duly elected to the office of County Commissioner of Precinct No. 4, Goliad County.

Accordingly the judgment will be reversed and judgment here rendered declaring Joel Bego duly elected to the office of County Commissioner of Precinct No. 4 of Goliad County, Texas, for the term beginning January 1, 1939, and ending December 31, 1940, and further that he is entitled to all the emoluments of the office for that term.

Reversed and rendered.