## NESBITT v. COBURN.

### No. 2379.

Court of Civil Appeals of Texas. Waco.

Sept. 30, 1940.

Williford, Williford & Bond, of Fairfield, for appellant.

Geppert, Geppert & Victery, of Teague, for appellee.

PER CURIAM.

This suit involves a contest of the run-off Democratic Primary election held in Precinct No. 3, Freestone County, Texas, on August 24, 1940. At said election, J. S. Coburn, contestant, and Tom Nesbitt, contestee, were opposing candidates for County Commissioner of said precinct. According to the returns, the contestee received 456 votes and the contestant 433. Upon the trial of the case it was found that 119 of the 122 votes cast at the Liberty voting box in said precinct were not signed by the presiding officer of the election. Of said 119 unsigned ballots 11 were cast for the contestant and 108 for the contestee. The trial court held that said 119 ballots were illegal and could not be counted and, after deducting same from the total vote of the two candidates, found that the contestant had received a majority of the votes and was entitled to a certificate of nomination. The contestee appealed.

Appellant's first assignment challenges the sufficiency of plaintiff's petition. The plaintiff alleged that he and contestee were rival candidates for the Democratic nomination for County Commissoiner at the election in question. The petition set out the number of votes cast in each of the voting boxes in said precinct and the number thereof received by each of the candidates. He alleged that at the Liberty voting box, according to the returns, contestant received 11 votes and contestee 111 votes; that the votes cast at said box were illegal and void and should not be counted for either party because the ballots were not signed nor authenticated by the presiding judge at said voting box; that according to the returns, contestant received 433 votes and contestee 456 votes, but, on account of the illegality of the votes cast at the Liberty voting box, which votes should be excluded and not counted, the contestant had actually received a majority of the legal votes cast at said election. The petition did not allege specifically that a certificate of election had been issued by the Democratic Executive Committee, but it did allege the facts as above set out and prayed "that said certificate of nomination be canceled and that final judgment declaring that said contestant received the majority of the legal votes cast in said several boxes, and judgment directing and commanding the County Clerk of Freestone County to place the name of the contestant on the official ballot for the November election, etc." Contestee's general demurrer to the petition was overruled. Later on during the trial, the contestant filed a trial amendment in which it was alleged that on August 31, 1940, the Democratic Executive Committee had canvassed the returns from said election and had declared contestee the nominee and had issued to him a certificate to that effect.

Appellant's contention is that the court erred in overruling his general demurrer to the petition, because the petition failed to allege that a certificate of nomination had been issued by the Democratic Executive Committee; and that it was error to allow appellee to file the trial amendment because same was filed more than ten days after the certificate of nomination was issued. We think the petition, as originally

filed, was good as against the general demurrer. In Gettys v. Cobble, Tex.Civ.App., 244 S.W. 860, it was held, in effect, that it was not indispensable to the jurisdiction of the court in an election contest for the petition to allege that a certificate of nomination had been issued. Furthermore, under a well settled rule, a petition must be given a liberal construction when testing its sufficiency as against a general demurrer. Here, the petition alleged that on account of the illegal votes counted at the Liberty voting box "according to the returns, the contestee had received a majority of the votes cast at said election," but that as a matter of fact contestant had received a majority of the votes, and he prayed that the certificate of nomination be canceled. The above allegations were sufficient, when liberally construed, to imply that a certificate of nomination had been issued.

 Moreover, we think the trial amendment, which was sufficient to cover this defect, if any, was permissible. As above stated, the certificate of nomination was issued on August 31, 1940. The election contest was filed September 3, 1940. The trial amendment, which alleged only the issuance of the certificate of nomination, was not filed until September 17, 1940, which was more than ten days after the issuance of the certificate of nomination. It was filed during the trial and was not filed in response to any ruling of the trial court. Revised Statutes, art. 3152, Vernon's Ann. Civ.St. art. 3152, provides that certificates of nomination in primary elections shall be subject to review "upon allegations of fraud or illegality, by the District Court * * * provided, that such allegations are filed in said Court within ten (10) days after the issuance of said certificate." We do not think said statute is subject to the construction that no amendments may be filed to the petition after the expiration of ten days from the issuance of the certificate of nomination. The statute merely prohibits the enlargement of the grounds of contest after the expiration of the statutory period. In the case of Sartwelle v. Dunn, Tex.Civ. App., 120 S.W.2d 130, language was used which might be construed to mean that since the machinery for the contest of a primary election is purely statutory and since no provision is made for allowing the pleadings to be amended, no amendments of any kind should be allowed after the expiration of the statutory ten day period. It should be noted, however, that in that case,

as well as in the case of Kinnard v. Lee, Tex.Civ.App., 244 S.W. 1046, the court had under consideration a case in which the contestant had sought by amendment to enlarge the grounds of contest. In the case at bar the contestant did not attempt by amendment to enlarge the allegations of illegality of the election. It is true that the provisions for contest of primary elections are purely statutory and where such statutes contain express directions for such a trial, they control. But such statutes do not undertake to provide for all the details of the trial, such as the form of the petition, the summoning of the witnesses, the impaneling of the jury, the taking of testimony, and the like. Presumably, in the absence of statutory limitation, the general law for the trial of a civil case applies. This would include the right to amend, except where limited by the statute or the nature of the proceedings. The statute merely provides that the allegations of fraud or illegality must be filed within ten days after the issuance of the certificate of nomination and thereby impliedly forbids the enlargement of these particular allegations after the expiration of the statutory period. It does not prohibit amendments in other respects and we see no reason why such amendments should not be allowed so long as they are necessary to the ends of justice and will not work a surprise or unnecessarily delay the trial. We overrule this assignment.

██ Revised Statutes, art. 3008, requires all ballots to bear the signature of the presiding judge, and Art. 3018 provides that no ballot which does not bear such signature shall be counted. It has been held that such provisions are mandatory. Miller v. Coffee, 118 Tex. 381, 15 S.W.2d 1036; Davis v. Walcott, Tex.Civ.App., 96 S.W.2d 817; Bass v. Lawrence, Tex.Civ.App., 300 S.W. 207; Turner v. Teller, Tex.Civ.App., 275 S.W. 115. The appellant concedes the correctness of this holding generally but contends that the above statutes do not apply to primary elections. Both of the Articles of the Statute above cited were originally parts of Acts, 1st C.S.1905, p. 520. See sections 72 and 78 thereof. That Act, by section 93 thereof, expressly provided that its provisions should apply to all elections in this state except as otherwise provided therein. Many of the provisions of said Act refer by express language to primary elections. In fact, section 102, Vernon's Ann. Civ. St., art. 3100, thereof defined the term "primary election" as an "election held by

the members of an organized political party for the purpose of nominating the candidates of such party," etc. This, we think, makes it clear that it was the intention of the Legislature that the provisions of said Act, except where otherwise provided, should apply to primary elections; and since sections 72 and 78 thereof, with reference to the signing of the ballots by the presiding judge and the counting of unsigned ballots, were parts of the same Act and there is nothing to indicate a different intention, said Articles must necessarily apply to primaries. Furthermore, section 93 of said Act has been brought forward and will now be found as Art. 2923 and reads as follows: "The provisions of this title shall apply to all elections held in this State, except as otherwise provided herein." Said Article is now embodied in the same Title of our statutes as are Articles 3008 and 3018 above cited. It is clear therefore that it was the intention of the Legislature in adopting the re-codification of the statutes that Articles 3008 and 3018 should apply to primary elections. See section 22 of the Final Title of the re-codification of the statutes of 1925. If this were not true, we would be practically without any statutes regulating the form of the ballot and the manner of conducting such elections. We therefore hold that Articles 3008 and 3018 apply to primary elections and that the trial court properly refused to count the unsigned ballots in the Liberty voting box in determining which of the candidates had received the nomination.

▄▄▄ Appellant contends that all of the votes cast at the Donie voting box, where appellee received a vast majority thereof, should have been held illegal and not counted because the party who acted as the presiding judge of said voting box had not been properly appointed the presiding judge thereof. It does not appear that such party had been expressly selected by the Democratic Executive Committee of the county to hold the election on the occasion in question. However, it does appear that he was the Democratic committeeman from that precinct and that it had been the custom for years for each precinct chairman of said county to serve as the presiding judge of the election in his precinct. The rule seems to be that the statutes with reference to the manner of appointing election officers are directory and that irregularities therein will not affect the validity of the election. In such cases where there is no protest on the part of the voters, they will be held to have ratified the illegal appointment or unauthorized assumption of authority of the party who serves as such election judge. Hill v. Smithville Ind. School Dist., Tex.Civ. App., 239 S.W. 987; Deaver v. State, 27 Tex.Civ.App. 453, 66 S.W. 256. It does not appear that there was any protest on the part of the voters with reference to the presiding judge in the voting box in question. We therefore hold that the court did not err in refusing to hold as illegal the votes counted at said Donie voting box.

▄▄▄ Revised Statutes, Art. 3045, provides for a contest of the validity of an election for certain state and county officers. Art. 3054 provides that if it appears upon a trial of any such contest as provided for in Art. 3045 that such a number of legal voters were by the officers or managers of the election denied the privilege of voting as would have materially changed the result, the court shall adjudge such election void and direct the proper officers to order another election to fill such offices. Appellant contends that under the foregoing provisions, the trial court should have ordered a new election for the nomination in question. Articles 3045 and 3054 above cited are parts of Chapter 9 of Title 50 of our Revised Statutes which provide for contests of elections. It has been held that the provisions of this chapter as evidenced by the language thereof apply to contests of general elections only and not to contests of primary elections. Iles v. Walker, 132 Tex. 6, 120 S. W.2d 418, par. 5. Articles 3151 and 3152 of Chapter 13 of the same Title provide for contests of primary elections. While Article 3054 does authorize the court to order another general election under certain conditions, there is no statute which authorizes the court to order a second primary election in the event, upon contest, the first one is held void. In fact, it would not ordinarily be practical to hold another primary after the contest and before the general election and this doubtless accounts for the absence of legislation authorizing such procedure. This assignment is overruled.

The trial court seems to have tried the case in accordance with the statutes enacted by the Legislature and the general law applicable thereto. We find no reversible error and the judgment of the trial court is therefore affirmed.

The appellant will have two days within which to file motion for rehearing.