

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

May 2, 1962

Honorable Don Cain
County Attorney
Gray County Courthouse
Pampa, Texas

Opinion No. WW-1323

Re: Authority of an election
judge to stamp the back
side of ballots with the
election judge's facsimile
signature made with a rubber
stamp, or to sign his initials,
in lieu of his actual signature
as required by Art. 8.11 of
the Texas Election Code.

Dear Mr. Cain:

You have asked the following questions:

"A. Can an election judge in a general,
special, or primary election, use
a rubber stamp containing his sig-
nature to place on the back of each
ballot in such election?

"B. If the answer to Question A is in
the negative, must such election
judge actually sign his signature
on the back of each ballot, or may
he actually sign his initials?"

Art. 8.11, Texas Election Code, reads in part as follows:

"After fixing his signature on the back
of each ballot, the election judge shall
check all ballots to see that they are
properly numbered, . . ., and then place
the ballots face down in a stack or stacks
from which each voter shall be allowed to
take his own ballot . . ." /Emphasis added./

Art. 8.20, Texas Election Code, reads in part as follows:

"No officer of election shall unfold or
examine the face of a ballot when received
from an elector, nor the endorsement on
the ballot, except the signature of the
judge, or the words stamped thereon, nor
shall he permit the same to be done; . . ."

Art. 8.21, Texas Election Code, reads in part as follows:

"The counting judges and clerks shall
familiarize themselves with the signature
of the judge who writes his name on each
ballot that is voted,. . . no ballot shall
be counted if it is found to be fraudulent,
but in the absence of a showing of fraud
the mere failure of the presiding judge to
sign the ballot shall not make any such
ballot illegal."

This provision in Art. 8.11 of the Election Code of 1951
is derived from Article 3008, V.C.S., which reads as follows:

"When the judges are satisfied as to
the right of the citizen to vote, the judge
shall stamp in legible characters with a
stamp of wood or rubber the poll tax receipt
or certificate of exemption with the words:
'Voted .......day of ..............., A.D.
19.....'  Or write the same words in ink
and then return said receipt or certificate
to the voter, and shall at the same time
deliver to him one official ballot on the
blank side of which the presiding judge
shall have previously written his signature.
The voter shall then immediately repair to
a voting booth or a place prepared for voting
by the election officers, and there prepare
his ballot in the manner provided by law."
/Emphasis added./

In Clark v. Hardison, 90 S.W. 342 (Civ.App. 1905), Appellants
contended that the ballots cast at the election should not be
counted, since the election judge affixed his signature on the
back of the ballot after the ballots had been delivered to him
by the voters to be placed in the ballot box.  The Court stated
at page 343:

"Section 72 of the Terrell Law (Acts
Leg. 1903, p. 147, c. 101) provides that
the election officers 'shall count no
ballots that do not bear his /presiding
judge's/ signature, or if, on examination
by the judges, such signature is found to
be a forgery.'. . .

". . . So the allegation that ballots
delivered to the voter were indorsed by

the presiding judge <u>after</u> being returned
to him by the voter presents no ground for
contest; such procedure being an irregularity,
in the absence of fraud, that will not defeat
the election."  /Emphasis added./

Turner v. Teller, 275 S.W. 115 (Civ.App., 1925) arose
because an election judge endorsed the backs of ballots with
his initials "F. A. W." instead of writing his entire name.
At that time Art. 3011, R.S. of 1911 (later, Art. 3018, V.C.S.,
and now Art. 8.21, Election Code) contained the words:

"The counting judges and clerks . . .
shall count no ballots that do not bear
his /presiding judge's/ signature. . . ."

The requirement for the presiding judge's signature was mandatory
at that time, while Art. 8.21, Election Code, supra, removes
this strict requirement.  Although the strict penalty for failure
to have the presiding judge's signature has now been removed,
the Turner v. Teller case is still good for the purpose of
telling us why the Legislature required the election judge's
signature in the first place, and the Court stated at page 116:

"This and similar requirements in our
statutes were enacted in order to prevent
fraud. . . .

". . .

"The specific purpose of the require-
ment in question is to make certain the
identity of the ballot cast with that of
the ballot handed to the voter at the time
of voting.  Identity may be said to be
'of the essence' of the provision. . . .

"Of course, the better practice is
for election judges to indorse their full
names upon the ballots, and they should
not jeopardize the validity of those
ballots and provoke election contests by
doing less.  Yet, when through indolence
or by design, they adopt their initials
only as their signatures, and indorse them
on the ballots as their signatures, and
the counting officials, looking upon them
as such, 'familiarize themselves' therewith
so as to enable them to identify the ballots
passed out with those handed in, then the

> provision in question has been sub-
> stantially complied with, the sole and
> full purpose and intention of the Legis-
> lature have been accomplished, and there-
> fore the ballots should be counted as cast.
> . . ."

In Bass v. Lawrence, 300 S.W. 207 (Civ.App., Error Dismissed, 1927), the question was raised about the election judge endorsing the ballots with his initials only. The court quoted from the Turner case, and stated at page 211:

> "Therefore, if the signature of the
> presiding judge was, as here appears,
> actually on the ballot at a time before
> the ballot was deposited by the voter in
> the voting box and it was an official
> ballot, the purposes and ends of the
> statute were accomplished. . . ."

In State v. Fletcher, 52 S.W.2d 450 (Civ.App., 1932) the Court stated at page 453:

> "The failure of Will Blanchette, as
> judge of the election, to write his name
> on the back of the ballots before handing
> them to the voters, did not render such
> ballots illegal when it was shown that
> after the voters had marked their ballots
> and returned them to Will Blanchette as
> judge of the election, he wrote his name
> thereon before depositing them in the ballot
> box. . . ." /Emphasis added./

In Arnold v. Anderson, 93 S.W. 692 (Civ.App., 1906) the question was raised as to whether the presiding election judge could authorize one of the other judges or clerks to sign the presiding judge's name. The presiding judge had signed his signature to 25 of the ballots, when he asked two other election officials to sign his name to the remainder of the ballots. Since the signature of the presiding judge was mandatory at that time, the trial court held that the ballots signed by persons other than the presiding judge were illegal ballots. The appellate court affirmed the trial court and stated at pages 696 and 697:

> ". . . The wisdom of these statutes
> cannot be doubted, for the theory that
> as civilization progresses beneficial
> conditions correspondingly improve, does
> not, in its relation to this subject, ob-

tain; for the recent history of the country indicating frauds in elections demonstrates that the more enlightenment possessed by the corrupt political boss, ward heeler, and striker, the more resourceful and successful he is in perpetrating fraud and defeating an honest count in elections. And evidently, as a check upon skilled methods of this class, the Legislature wisely enacted section 72. One of the methods of fraud perpetrated, which may be ascertained from reading the history of elections in recent years in many of our states, was what is known as 'stuffing' the ballot box--adding spurious votes. To correct or to prevent this evil, it is difficult to imagine a means that could be better adapted than that provided for in section 72. The presiding judge is required to write his personal signature on the ballot. . . . The ballot box might be 'stuffed' with spurious tickets which might, in the absence of this check, mislead and deceive; but if this law was complied with, it would be a difficult matter to perpetrate fraud, because out of the number of witnesses provided by law who must have a knowledge of the signature of the presiding judge, it would be easy to detect whether the signature was genuine or forged.

". . . The language used indicates clearly that he must, in person, sign his name, and that any ballot which does not bear his signature should not be counted. This duty being so imperative as demanded by the terms of the statute, in order that its purpose and effect might be accomplished --that is, making the personal signature of the presiding judge the final test of the verity and legality of the ballot, we do not believe that it was the intention of the law to permit him to delegate the authority to some one else to sign his name to the ballots. . . ."

In McCharen v. Mead, 275 S.W. 117 (Civ.App., 1925) the Court held that ballots which bore the initials only of the presiding judge were valid ballots, and cited the Turner case

as authority.  There are other cases on the subject of the election judge's signature.  <u>Bego v. Abrameit</u>, 130 S.W.2d 912 (Civ.App. 1939).  <u>Miller v. Coffee</u>, 118 Tex. 381, 15 S.W.2d 1036 (1929).  <u>Nesbitt v. Coburn</u>, 143 S.W.2d 229 (Civ.App. 1940).

As pointed out above, Art. 8.21, Election Code, no longer makes the presiding judge's signature mandatory in order for the ballot to be a valid ballot "in the absence of a showing of fraud."  But the language of the <u>Turner</u> case still makes sense when it says, ". . . the better practice is for elections judges to indorse their full names upon the ballots, and they should not jeopardize the validity of those ballots and provoke election contests by doing less."  This brings us to the question of the use  of the rubber stamp facsimile signature.  A rubber stamp signature can be impressed on the ballot by whoever is holding the rubber stamp in his hand.  During the 12 hours that the polls are open, the presiding judge may leave his seat at least temporarily for a few minutes at various times.  Who wields the rubber stamp while he is gone?  The <u>Arnold v. Anderson</u> case holds that a written name is not the signature of the presiding judge unless written by such judge, himself.  Of course, if the rubber stamp signature should be held to be the same as no signature at all, the ballots are still valid, "in the absence of a showing of fraud."  We hold, therefore, that a rubber stamp facsimile signature of the presiding judge at an election does not comply with the requirement of Art. 8.11, Election Code, which states that the ballots are to be signed with the signature of the presiding judge.  In answer to your second question, we hold that although the better practice is for the election judge to sign his name in full, his initials will meet the requirements of the statute.

S U M M A R Y

A rubber stamp facsimile signature
of the presiding judge at an election
does not comply with the requirements
of Art. 8.11, Election Code, which states
that such election judge shall affix his
signature on the back side of all ballots.

The better practice is for the
election judge to sign his full name in
affixing his signature to the back side
of the ballots, but signing with his

initials only will meet the requirements
of the statute.

                              Yours very truly,

                              WILL WILSON
                              Attorney General of Texas

                         By:  Riley Eugene Fletcher
                              Assistant

REF/cm

APPROVED:

OPINION COMMITTEE:
W. V. Geppert, Chairman

Marietta McGregor Payne
Henry Braswell
J. C. Davis
F. C. Jack Goodman

REVIEWED FOR THE ATTORNEY GENERAL
By:  Houghton Brownlee, Jr.